# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## NORTHERN DIVISION

NO. 99-8164

CIV

MANHATTAN MAGNOLIA CORP.,
a Florida corporation, t/a
AWARE WOMAN MEDICAL CENTER;

AWARE WOMAN CENTER FOR CHOICE, INC.,
a Florida corporation;

EDWARD W. (TODD) WINDLE, III, WENDY LaVIGNA,
ELLEN MORITZ, CHERYL PFAU, and
SHARON BRANIN,

individually, and on behalf of the classes
of patients, staff, physicians, invitees, guests,
and independent contractors
damaged by defendants,

                                               **Plaintiffs,**

-versus-

                           **CLASS RELIEF SOUGHT**

                           **TRIAL BY JURY REQUESTED**

RAYMOND UNTERBURGER,
ERIC OLSON,
CHERYL UNTERBURGER,
MEREDITH TROTTER RANEY, JR,
WILLIAM LeSTOURGEON,

JOHN C 'JAY' ROGERS,
PATRICIA McEWEN,
RICHARD VANDERBILT,
PATRICIA VANDERBILT,
MICHELLE HERZOG, and



**JOHN & JANE DOES & MOES I-X,**

**COMPUSERVE, INCORPORATED,**
**a corporation doing business in Florida,**

**TML INFORMATION SERVICES, INC,**
**a corporation doing business in Florida, and**

**DOE CORPORATIONS I-X,**
**their agents, assigns, collaborators, accomplices,**
**confederates, aiders & abettors, successors in interest,**
**those acting in concert or participating with them,**
**and the class of individuals and entities similarly**
**situated as to the named defendants,**

                                                    **Defendants.**

---

### COMPLAINT IN CIVIL ACTION FOR DECLARATORY JUDGMENT, STATUTORY & ACTUAL DAMAGES, ASSET FORFEITURE, AND EXEMPLARY DAMAGES, UNDER FACE, 18 USC §248, RICO, 18 USC §1961-1968, AND SUPPLEMENTAL FEDERAL & STATE LAW GROUNDS, AND OTHER NECESSARY AND PROPER RELIEF

---

    Plaintiffs Manhattan Magnolia Corp., *et al* [ "MAGNOLIA" may hereafter designate all plaintiffs and classes for brevity], bring this civil action for declaratory relief, statutory and actual personal, property, and business damages, exemplary damages, physical and emotional damage and suffering, forfeiture of assets, vehicles, buildings & things used in defendants' crimes and torts, costs and fees, and other necessary & appropriate relief & compensation, and respectfully state  their complaint as follows:

# I.  JURISDICTION & VENUE

1.  This federal district court has sole and exclusive jurisdiction under the U.S. Constitution, FACE, 18 USC §248(a)&(c), the Civil Rights Acts, 28 USC §1343, implemented by 42 USC §§1983-1988, the Federal Question Statute, 28 USC §1331, including federal common law based on the Fourteenth Amendment, and FDPPA, 18 USC §2721.

2.  There is further jurisdiction under the civil RICO legislation, 18 USC §§1961-1968, as developed in the Supreme Court case of *NOW v Scheidler*, 510 US 249 (1994) ( RICO applied to harassment and extortion ) .

3. Supplemental and pendent jurisdiction lie under federal common law and the Federal Supplemental Jurisdiction Statute, 28 USC §1367, over interrelated state law claims.

4.  Any pendent state law claims arise from the same and similar factual matrixes as the federal claims, such as state constitutional privacy rights, trespass, nuisance, infliction of emotional distress, damage to business & professional relationships & good will, state RICO, stalking laws, and civil conspiracy. (As in similar case of *Tompkins v Cyr*, 995 F Supp 664 (ND Tex 1998) (Dallas jury verdict against similar anti-abortion harassment).

5. Plaintiffs are the reproductive health care facility, and clinic staff who were going to and doing their jobs, in this

federal district the 4th day of March, 1995.

6.   Several of the principal tortious incidents in question took place that day, including the clinic blockade leading to *United States v Unterburger*, 97 F3d 1413 (11th Cir Oct 23, 1996)(Hatchett, CJ, Dubina, J, & Cohill, SDJ), *aff'g* No 95-8025-CR-JAG)(SD Fla)(Gonzalez, J).

7. Plaintiffs also include other individuals and classes who have all been damaged and injured, in person and property, by the same, similar, and numerous additional acts and omissions of the same defendants which form the underlying basis for this complaint.

8.  All plaintiffs have the capacity to sue and bring this civil action in this District and Division.

9.  The corporate plaintiffs  regularly  do business in this Southern District of Florida, and have been damaged in their person and property, directly and indirectly, by defendants.

10.   A majority of the individual plaintiffs reside in the Southern District of Florida, were present in this District at the time of the several principal negligent, reckless, wanton, and  otherwise  tortious  occurrences,  and  were  damaged thereby.

11.  Plaintiffs have standing to assert the *jus tertii* liberty and privacy rights of other third parties involved in seeking and  providing  reproductive  health  care  services,  such  as patients,  companions,  staff,  invitees,  vendors,  independent contractors, and physicians.

12. All named defendants have engaged in principal acts and omissions damaging and impacting harmfully against plaintiffs and plaintiff classes in the Southern District of Florida.

13. All defendants are jointly and severally responsible for numerous negligent, reckless, wanton, and otherwise tortious acts and omissions in this District.

14. Said acts and omissions have been the proximate and contributing causes of substantial personal, bodily, emotional, professional, and business injuries and damages to the plaintiffs herein.

15. Defendants MICHELLE HERZOG, one SID MOE to be named, and certain DOEs reside in the Southern District, Ft Lauderdale.

16. Herzog, Moe, and others with culpable knowledge, traveled North on I-95 to West Palm to witness, support, aid, and abet the 7:00 AM, March 4, 1995, FACE tortious incidents, occurrences, and crimes central to the first part of this action, and other negligent, reckless, and tortious acts.

17. Numerous individual defendants arose before sunrise to attend the blockade and obstruct the clinic with numerous others similarly inspired, and to provide support, aid, abet, and hinder investigation.

18. One defendant Mr Meredith Trotter Raney, Jr, rose as early as 4:30 AM, with a pre-arranged rental or loaner car already at hand.

19. The same legal standards in this Eleventh Circuit on conspiracy, accomplices, accessories before and after the fact,

and obstruction apply here as they would to persons who rise early to watch, videotape, and cheer at a bank robbery, drug transaction, or federal crime.

20. Eric Olson, Raymond & Cheryl Unterburger, Meredith Raney, William LeStourgeon, John C "Jay" Rogers, Patricia McEwen, the Vanderbilts, and some of Doe's I-X are adult residents and citizens of Florida.

21. All said individual defendants have negligently, recklessly, and wantonly engaged in numerous incidents, occurrences, acts and omissions damaging to plaintiffs.

22. Said incidents have further damaged the plaintiff classes, said damage impacting in this District.

23. The corporate defendants – COMPUSERVE, and TML – all do substantial business in the Southern District.

24. The corporate defendants in particular have negligently, recklessly, and wantonly provided individual defendants with private and personal information on the classes and subclasses of patients, staff, doctors, and others, without consent from these victims.

25. The corporate defendants have tortiously and without consent used and traded in the names and personal information of the plaintiff classes, invaded the personal security and privacy of these individuals, and caused personal, physical, emotional, professional and business damages to them without legitimate reason or justification.

26. Much of this damage occurred to a victim class of many hundreds of AWCC patients who reside within this

Southern District. They simply drove in and out of a private reproductive health care facility parking lot. The AWCC lot was under private unconsented surveillance by one or more of the individual defendants, from the front yard of defendant John Rogers' "Spy House," across the street from said AWCC parking lot. Defendants Raney and others then and there surreptitiously copied their license plates, accessed CompuServe, or TML, or some other privacy-invading computer database, and turned the vehicle records into a metaphorical billboard. Then said defendants used their "blackmail database" to make unexpected and unwanted privacy-invading and security threatening contact with this class of unsuspecting strangers, now plaintiffs, and plaintiff classes.

## II. <u>FACTS</u>

27.　For a substantial proportion of the 1990s, the individual defendants have engaged, negligently, recklessly, wantonly, and with varying levels of intent, in numerous activities, conspiracies, and in association with an unlawful enterprise to harass, obstruct, threaten, and intimidate clinics, reproductive health care facilities, physicians, patients, and staff who provide women's health care services in Florida.

28.　Defendants' activities have been conducted in interstate commerce and across state lines, as they participated in a nationwide network, and extremist fundamentalist underground, involving training in numerous kinds of harassment and intimidation techniques.

29.   Defendants' negligent, reckless, wanton, outrageous, and sometimes intentional activities have been conducted in substantial part using their own and loaned or rented vehicles, and from their homes and places of residence, the residences of others – particularly Meredith Raney and John Rogers - and at the sites of professional activity of their victims, both in this Southern District and elsewhere.

30. Each individual defendant has engaged in numerous predicate acts, and had numerous predicate arrests and/or convictions pertaining to negligent and intentional activities directed toward harassing, intimidating, threatening, and obstructing the victim plaintiffs and other victims.

31. The *damages* and *physical & emotional injuries* to plaintiffs' persons, property, and relationships caused by defendants have been a combination of multiple accidental, negligent, reckless, wanton, intentional, and malicious incidents and occurrences.

32.   Some of the damages have been the accidental result in part of mental illness and/or defect in one or more defendants, acting out obsessive-compulsive disorders, delusions, pseudo-religious hallucinations, or bipolar manic depressive episodes.

33.   On or about March 4, 1995, defendants Unterburger, Olson, and others negligently, recklessly, wantonly and intentionally attempted to and did obstruct, intimidate, threaten, and interfere with plaintiffs and others involved in providing reproductive health care services in this

federal Southern District, at "AWMC" the Aware Woman Medical Center, 1497 Forest Hill Boulevard, Lake Clarke Shores, Palm Beach County, Florida, owned by "Magnolia."

34.   Said actions were both tortious and in violation of FACE, the Freedom of Access to Clinic Entrances Act of 1994, 18 USC §248 (a), and other laws.

35. This episode began shortly after 7 AM on Saturday morning, March 4, 1995, and was joined in by the other individuals who came as joint trespassers, accomplices, accessories, witnesses, scribes, videographers, harassers, and intimidators of patients, staff, physicians, and others.

36.   Olson and Unterburger, for a first incident and occurrence or Count, physically blocked the main entrance to the AWMC building with their bodies, for a period of some several hours.

37. Olson and Unterburger, for a second incident or Count, further physically blocked the main entrance to AWMC with a large and heavy concrete block they had previously obtained or fabricated with the aid of other unnamed defendants, or which they had shipped in from anti-abortion central supply.

38. Olson and Unterburger, for a third incident or Count, physically blocked the main entrance to AWMC with a series of locks and connecting chains, which were run into, through, and around their bodies and the concrete block, in order to complicate, obstruct, and delay their removal from the premises.

39. Olson and Unterburger, for a fourth incident or Count,

arranged to physically block a secondary entrance to AWMC by "gluing" the door shut with a fast-acting long chained high molecular weight polymer sealant glue which rendered normal use of the door improbable, and required intervention by a moderately expensive locksmith later that day. On good information and belief, Cheryl Unterburger or another female defendant unknown, or a disguised Meredith Raney committed that tort or crime, and did not know that she was observed and identified.

40. Olson and Unterburger, for a fifth Count, arranged to physically block an additional secondary entrance door to AWMC by again and additionally "gluing" said door shut with more similar fast-acting polymer sealant glue, which rendered normal use of the door improbable, and also required intervention and partial replacement by a locksmith.

41. Olson and Unterburger, for a sixth Count, harassed, threatened, and intimidated AWMC staff and patients by haranguing them with "fighting words," and calling them "assassins" and "murderers," rather than lawful participants in constitutionally, Congressionally, and state law protected health care services.

42. Olson and Unterburger, for a seventh Count, physically trespassed at the said AWMC clinic entrance on this, and on previous occasions, in that the entrance and parking areas are only for invitees, which those individuals and their accomplices have never been.

43. Olson and Unterburger, for an eighth Count, obstructed

plaintiffs and police officers' attempts to remove them, by not providing the keys to the locks, but leaving said keys with an accomplice, whom they would not identify, but who was known to them and tortiously lurking nearby.

44. Olson and Unterburger for a ninth count rendered themselves indefensible tortious nuisances at AWMC on said day, as they had been to plaintiffs before and since.

45. Olson and Unterburger, for an tenth Count, did negligently, recklessly, wantonly, outrageously, and in part intentionally conspire civilly and confederate with each other and other persons to obstruct, intimidate, threaten, and interfere with the provision of reproductive health care services, as to each and every foregoing Count and instance set forth.

46. Defendants Raney, LeStourgeon, Cheryl Unterburger, McEwen, the Vanderbilts, Herzog, and others as yet unknown, had prior reasonably foreseeable and culpable knowledge of the foregoing plans and conduct by Olson and Unterburger, and did arise as early as 4:30 AM in order to travel along the interstate highways to arrive at the AWMC reproductive health care facility around 7 AM, and participate in the occurrences about which they had been foretold, and/or reasonably could and should have foreseen, but for careless and reckless dysfunctional miscomprehension.

47. Defendant Raney participated actively as organizer of anti-abortion support and harassment forces on that day, and others, and selectively videotaped patients, staff, and the

principal perpetrators of the March 4, 1995, event, in part to attempt to influence and manipulate subsequent civil and criminal proceedings by misleading editing, omissions, and misrepresentations.

48.    Mr Raney obtained no consent or authorization to come onto the private clinic area premises that day, and no consent to videotape any clinic patient, staff, invitee, or vehicle license plate, which he nonetheless proceeded to do, with carelessness throughout a number of incidents and occurrences.

49. Mr Raney did negligently, recklessly, wantonly, and intentionally trespass on the premises, not singularly but repeatedly, ignoring at least four warnings to leave the private premises, then still sneaking back and suggesting to others that they play at being "dumb" about whether they were trespassing.

50. Defendants Raney, McEwen, Herzog, and others presently unknown, also went around to the back of the AWMC facility. There they proceeded loudly to yell and scream "fighting words," and make unreasonable and disturbing high decibel level noise in close proximity to the medical and surgical facility, thereby carelessly, recklessly, outrageously, and wantonly creating a hazard to the health, safety, and well-being of those persons inside, who could hear them well, and were put at foreseeable risk of dangerous distraction by the incessant racket.

51.    Defendants Raney, McEwen, Herzog, and other

confederates not presently known, have particularly loud, grating, and disturbing voices which they project to disrupt, threaten, intimidate, and distract others from a distance, particularly others engaged in seeking or providing lawful, needed, private reproductive health care services.

52. The occurrence of each and every act and omission of Olson and Unterburger set out in the foregoing Counts was reasonably foreseeable to each other named and unnamed individual defendant, but carelessly and negligently disregarded by them.

53. No other individual defendants intervened to stop, but instead they traveled, convened, and conspired to support and participate in the actions of Olson and Unterburger, making them liable jointly and severally for all counts and for all damages proximately caused or contributed to and for each and every count.

54. Defendants Raney, LeStourgeon, and others, have further, after the fact, endeavored to hide, conceal, and cover up the foregoing events and their involvement therein.

55. The activities and events set out above were not isolated incidents, but were part of a continuing and ongoing enterprise, pattern, and practice engaged in by each and every individual defendant over a number of years against reproductive health care providers, starting from 1988-1989.

56. Said activities and enterprise have had the result, purpose and effect of harassing, obstructing, threatening, and intimidating reproductive health care providers, including

AWMC and the sister facility in Melbourne, AWCC, and causing numerous forms of damages and injuries to persons and property, negligently, recklessly, wantonly, and in part intentionally.

57. The acts and omissions of defendants have no colourable First Amendment claim to protection, but involve stalking, harassment, intimidation, obstruction, fighting words, insidious insults, and threatening conduct of the nature against which the FACE statute, 18 USC §248, was passed, and the FDPPA statute, 18 USC §2721, enacted.

58. The background of FACE and FDPPA are described in the legislative history found in the pertinent and contemporaneous U.S. Code Congressional & Administrative News, as well as legislative hearings and reports, and refer specifically to the need to stop the kinds of harassment engaged in by these kinds of individual defendants against reproductive health care facilities across America.

59. The acts and omissions of defendants are a modern day version of those traditional harassing, intimidating, chasing, and threatening acts engaged in by the Ku Klux Klan, and are also proscribed by the post-Reconstruction Civil Rights Acts, 42 USC §§1983-1988, which supplement the relief requested here.

60. The acts and omissions of defendants also have amounted to, and been associated with one or more unlawful enterprises, and coupled with ample predicate acts, sufficient to violate civil RICO as in *NOW v Scheidler*, 510 US 249

(1994), and to give rise to property and asset forfeiture, as well as appropriate trebling of FACE and other damage sums, including the trebling of punitive damages.

## III. <u>THE UNTERBURGER-OLSON F.A.C.E PROSECUTION</u>

61. Defendants Olson and Unterburger alone were federally prosecuted, tried, convicted, and sentenced on only one FACE count for their activities on March 4, 1995, although evidence existed for numerous counts and additional perpetrators.

62. Olson and Unterburger have individually and collectively shown no remorse nor comprehension of the extortionate, anti-social, security-threatening, intimidating, delusional, and damaging nature of their acts and pattern of behavior against the lawful activities of others exercising their legal and constitutional rights.

63. Accessories before and after the fact, and co-conspirators of Olson and Unterburger, have not yet been brought to justice under FACE and other laws for their negligent, reckless, wanton, and otherwise wrongful acts and omissions.

64. The FACE criminal information against defendants Olson and Unterburger was dated March 15, 1995.

65. Defendants Olson and Unterburger were both convicted after a bench trial on September 18, 1995, where Meredith Raney testified, and attempted to mislead the Court on one or more material matters.

66. The convictions of both were upheld by the Eleventh Circuit in *United States v Unterburger*, 97 F3d 1413 (11th Cir Oct. 23, 1996)(Hatchett, CJ, Dubina, J & Cohill, SDJ), aff'g Gonzalez, J, No. 95-8025-CR-JAG (SD Fla).

67. The Olson/Unterburger convictions were final and filed in this District Court January 8, 1997.

68. Civil actions for remedial relief, statutory & actual damages, exemplary damages, property forfeiture, voiding of fraudulent property transfers, and work orders for defendants to pay off judgments and damages, are now ripe and timely for filing.

## IV. <u>THE COMPUSERVE CONNECTION: THE MASSIVE PRIVACY INVASION- INFORMATION FOR STALKERS</u>

69. These plaintiffs proffer further closely related, and jurisprudentially important, claims against these individual defendants, and jointly against the named corporate defendants.

70. The joint Individual/Corporate claims arise from a large number of continuing incidents and activities causing serious damage to a very significant and substantial class of women seeking reproductive health care services who reside in the Southern District.

71. Preliminarily, nearly all of the AWMC patients reside in the Southern District. A substantial number were damaged in several ways by the bizarre Olson/Unterburger "Invasion for Jesus" on March 4, 1995.

72.   A significant proportion of plaintiff AWCC patients in Melbourne also come from the Southern District, which includes the counties enumerated in 28 USC §89(c). This class includes hundreds of women and their companions who annually come to Melbourne from more southern cities and counties, seeking private medical care in a confidential & safe reproductive health care facility protected from harassment by the Constitution and Acts of Congress.

73.   Defendants Raney, LeStourgeon, Unterburger(s), Rogers, McEwen, Vanderbilt(s), and others not yet known, have during the past several years worked covertly for extremist fundamentalist causes as "spies" and "scribes."   They and others surveil the aforesaid private citizens of the Southern District from the John "Jay" Rogers' "Spy House" across the street from the AWCC clinic.

74.   This stalking-like surveillance has been for no motor vehicle or traffic safety purpose, for no purpose allowed by FACE or FDPPA, and utterly without the consent of any such persons, who are in fact outraged, violated, and seriously damaged by these intrusions, especially by the plate-stalking and the harassment generated by "Jay's Killer Web Site."

75.   The surveillance has been to threaten and intimidate persons engaged in providing and seeking reproductive health care services, a purpose forbidden by FACE.

76.   These defendants, led and misled by Messrs Raney, LeStourgeon, and Rogers, are now known covertly to have used binoculars and videotapes to note on log sheets the license

plates of vehicles entering and leaving AWCC premises.

77.   These individual defendants, and others, have built a "blackmail database" since around 1990 of personal information about patients and their companions, for use *inter alia* in some future, delusional Holocaust Trial of women who have had abortions, and their doctors, and staff, as well as certain Supreme Court Justices specified on a very strange extremist fundamentalist Christian "Nuremberg" Web Site. http://www.christiangallery.com/atrocity/aborts.html.

78.   Certain individual defendants are contributors of personal & private information to both said Websites.  The NB site scribes strike through the names of individuals *who have been killed,* to keep us all up to date. Neither the Website nor the contributing individuals has consent or authorization of any kind to utilize the names of the people on the "Hit Lists," especially not the federal Justices and Judges listed.

79.  Raney in fact has designed and revised highly detailed, almost obsessive-compulsive  "spy sheets" for daily use which encourage the "fundamentalist scribes" to make extensive notes on patients, staff, and especially doctors, who have been harassed and threatened thereafter into quitting.  These notes keep track of staff, whether the doctor is wearing a bulletproof vest, and when a staff nurse is alone in the clinic.

80.  Defendant Raney takes the daily "spy sheets" and uses his own or defendant Jay Rogers' computer at the "Spy House" to obtain from defendants CompuServe,  TML Services, and/or other spy database services,  enough unconsented personal

information on a patient that he could visit that night unexpectedly, or write, or call, or harass, intimidate, or threaten at will.

81.   The data provided by the corporate defendants is sufficient for any stalker or shooter to find, threaten, and assault any member of the plaintiff class. It is negligently, recklessly, and wantonly released for money, without prudent safeguards to protect human security and privacy.

82.   Raney and others since the early 1990s have copied the license plates of thousands of women, almost the entire class of Southern District resident patients of AWCC. Raney has obtained private personal identifying information on said persons from CompuServe, TML, and other services, with no consent of any kind whatever.

83.   Raney then has attempted to contact these women through letters and telephone calls to them into the Southern District. The unwanted letters have numbered in the hundreds, perhaps thousands, and go to the registered owner of the vehicle, who may or may not be the patient, a factor which increases and aggravates the privacy and security invasion, as well as the physical and emotional damage to each patient.

84.   The occurrence of such unsolicited and unwanted calls and letters creates havoc, and is negligent, reckless, wanton, outrageous, intentional, malicious, and an insidious ongoing threat, invasion of security, privacy, and well-being of the unconsenting victim individuals affected.

85.   Such calls and letters cause a reasonable fear, and

intimidation in the unsuspecting recipients, who compare that sudden shock to being stalked, raped or attacked by a delusional stranger. This stranger has surveilled them and found out very private, intimate details about their medical care, utterly without any consent or legitimate legal justification.

86.    Each such letter and call could be found by a reasonable fact-finder to be a separate incident and occurrence, and a *per se* violation of FACE, as well as a *per se* violation of FDPPA, with a varying level of intent from mere negligence through recklessness to general intent, even malicious delight.

87.    Because of this surveillance by the individual defendants, prospective AWCC patients from the Southern District are often intimidated and threatened into using disguises and rental cars to protect their security from stalking, and their lives from unwanted, unpredictable intrusions.

88.    Many other patients feel compelled to travel to other, distant cities for medical care, to avoid harassment, intimidation, surveillance, and unwanted contact with the Raney-led group of loud, unpredictable fundamentalist extremists.

89.    The individual defendant "scribes," COMPUSERVE, TML, and others cooperate to make the "blackmail database" all come together in the computers of Meredith Raney, Jay Rogers, and unknown others, where they are stored, then sent

to distant secret places and computers in the extremist fundamentalist underground, for future harassment, blackmail, and delusional Holocaust Trial preparation and pretrial.

90.    Each and every incident in the stages of compilation of the "blackmail database" negligently, recklessly, and wantonly causes serious personal and property damage to the plaintiffs and their classes.

91.    Declaratory and injunctive relief, asset seizures, property forfeitures, and substantial actual and exemplary damages are necessary to stop this massive theft of privacy and security by defendants.

## V. CLASS ACTION ALLEGATIONS

92.    The class of plaintiffs damaged by defendants is so numerous that joinder of all members individually would not be feasible, but unduly cumbersome and intrusive upon security, safety, and privacy.

93.    The license plates of several hundred Southern District residents are known to have been covertly copied by defendants, and personal information accessed without any consent or legal justification.

94.    Numerous questions of law and fact are common to these claims, and predominate over individual questions. The claims are likely to be opposed by common defenses from the individual and corporate defendants.

95.    The claims of these plaintiffs are typical of the class,

and will be fairly presented by the named plaintiffs, who will fully and adequately protect the interests of the class.

96.    The pursuit of hundreds of separate actions in different courts by individual members of the class would be impossibly burdensome, and would create a risk of varying determinations on multiple interrelated issues, that could establish incompatible criteria of conduct for defendants, who have acted on grounds generally applicable to their classes in any event.

97.    A unified class action in this Court for Southern District victims of these individual and corporate defendants is superior to any other method for the fair and efficient adjudication of the overall interrelated controversy.

## VI.  CLAIMS FOR RELIEF

98. PLAINTIFFS REITERATE AND INCORPORATE BY REFERENCE EACH AND EVERY ONE OF THE FOREGOING ALLEGATIONS AND PARAGRAPHS, AND FURTHER STATE THE FOLLOWING AS COUNTS AND CLAIMS ON WHICH RELIEF CAN BE GRANTED:

### COUNT I: MULTIPLE CIVIL FACE VIOLATIONS

99.  The individual Defendants and each one of them are jointly and severally responsible and liable for each and every one of the multiple FACE violations set out, for actual or

statutory damages of a minimum $5,000 each per count, multiplied by each individual, or contributing corporate plaintiff, and for punitive damages, to the extent that one or more contributing incidents, occurrences, acts or omissions was reckless, wanton, malicious, or willful, and for forfeiture of property and assets used in the violations, and other relief.

## COUNT II: MULTIPLE INVASIONS OF SECURITY & PRIVACY RIGHTS UNDER FEDERAL & STATE LAW

100.   The negligent, reckless, wanton, intended, and otherwise tortious acts and omissions of defendants have caused and contributed to multiple irreparable and severely damaging invasions of the federal and state security, safety, liberty, and privacy rights of the plaintiffs and each member of each class.

## COUNT III: INFLICTION OF EMOTIONAL DISTRESS

101. The negligent, reckless, wanton, intended, outrageous, and otherwise tortious acts and omissions of defendants have caused and contributed to substantial and severe emotional distress with physical manifestations and substantial foreseeable damages to each plaintiff and each member of each class.

## COUNT IV: CIVIL TRESPASS

102.  The individual Defendants and each one of them are jointly and severally responsible and liable for multiple civil

trespasses on the AWMC premises and parking area.

103.   Said civil trespasses were negligent, reckless, wanton, and otherwise tortious, and caused and contributed to foreseeable damages to each plaintiff and their classes.

## COUNT V: NUISANCE

104.  The individual Defendants and each one of them are jointly and severally responsible and liable as nuisances in law and fact, for the conduct and omissions heretofore alleged.

## COUNT VI: INTERFERENCE WITH BUSINESS & PROFESSIONAL RELATIONSHIPS

105.   The negligent, reckless, wanton, intended, and otherwise tortious acts and omissions of defendants have unreasonably interfered with numerous business and professional relationships among AWCC, AWMC, physicians, staff, patients, invitees, and others.

106.   Said interferences have caused serious, substantial, painful, and irreparable injury and damages.

## COUNT VII: INTERFERENCE WITH BUSINESS & PROFESSIONAL REPUTATION & GOOD WILL

107.   The negligent, reckless, wanton, intended, and otherwise tortious acts and omissions of defendants have

unreasonably interfered in numerous ways with, and caused immeasurable damage to, the business and professional activities and reputations of AWCC and AWMC.

## COUNT VIII: CIVIL CONSPIRACY

108.   Defendants and each one of them are jointly and severally responsible and liable for civil conspiracy to obstruct, intimidate, threaten, and interfere with the provision of reproductive health care services by plaintiffs.

109.   Said civil conspiracy has caused and contributed to immeasurable, irreparable, and substantial personal and property damages to the plaintiffs and their classes.

## COUNT IX: MULTIPLE FDPPA VIOLATIONS BY CERTAIN DEFENDANTS

110.   The negligent, reckless, wanton, intended, and otherwise tortious acts and omissions of the defendants threaten unreasonably, unnecessarily, and recklessly to disclose, and have disclosed, personal information that can and has been derived from motor vehicle and/or drivers license records based on surreptitious copying of plates by the individual defendants, and unconsented, invasive use by their confederates.

111. Said disclosures are not necessary for, nor related to, motor vehicle or public safety, nor can they be based on knowing and informed written consent of drivers, passengers, or invitees associated with Magnolia, who strongly object to and are seriously damaged by such unconsented and unwanted invasions of security and privacy.

112. Nor are such disclosures and dissemination allowable under any excepting provision of FDPPA, 18 USC §2721(b)(1)-(14), nor for any other lawful purpose.

113. The disclosures and disseminations complained of and anticipated occur in part because of careless and reckless state agency practices in making unconsented open sales of private informational details on vehicle driver lists, under color of state law, without providing adequate notice or opt out for vehicle owners, and without providing any protection whatever for non-owner drivers, passengers, and other victims.

114. Individuals in Florida are required to register their vehicles and become licensed to drive, but no individuals consent thereby to have their names, addresses, and other personal information splashed in effect across a public billboard that can be viewed and copied by any voyeur, stalker, rapist, burglar, potential killer, shooter, prison inmate, or other dangerous person.

115. Magnolia & AWCC associates and threatened individuals who drive in and out of the Magnolia parking areas are irreparably injured and damaged by the foregoing acts and omissions. None of these individuals has an adequate opportunity, means, or notice to prevent release and unlawful use of this information against them, nor to stop the compilation and reckless use of a "blackmail database" by Raney, LeStourgeon, and their confederates against them.

116. The public interest favors protection of private personal information from potential stalkers and abusers, over the practice by State DMVs and computer database entities of profiting from the unrestrained sale of such information to individuals such as Raney and his confederates.

## COUNT X: CIVIL RICO VIOLATIONS

117. Defendants and each one of them with sufficient predicate acts are jointly and severally responsible and liable under RICO for damages caused by their engaging in an unlawful conspiracy, and consorting with one or more unlawful enterprises against plaintiffs, and are thereby subject to penalties of treble damages and asset forfeiture.

## COUNT XI: EXEMPLARY DAMAGES, FORFEITURE, WORK

118. Certain reckless misconduct and omissions by defendants have been sufficiently reckless, wanton,

outrageous, inhumane, and malicious to warrant substantial exemplary damages awards against each and every defendant on behalf of each and every plaintiff and class member.

119.    Said exemplary damage awards should be made sufficient to deter each defendant forever, and punish and prevent each said defendant from continuing the misconduct at issue, directly or indirectly, in any form, long into the future.

120.    Defendants such as Raney, LeStourgeon, and Rogers, who have worked primarily at harassing women and terrorizing health care facilities for these many years, should have their harassment-related assets, property and buildings forfeited, and be ordered to work using any real world skills they may have to satisfy the foregoing requested judgments, and to break loose from their cult-like patterns of unlawful, tortious, delusional, and irrational law-breaking behavior.

## VII. <u>TRIAL BY JURY REQUESTED</u>

121.  Plaintiffs request trial by jury on each issue of fact and damages as would be required under the common law and the usual practice of this Court.

## VIII.  <u>JUDGMENT AND RELIEF REQUESTED</u>

WHEREFORE, PLAINTIFFS RESPECTFULLY REQUEST THE

COURT

(1) to enter judgment against each defendant, jointly and severally, for full actual, statutory, punitive, and treble damages, in excess of $50 million, or as proven,

(2) to forfeit sufficient and relevant assets and real & personal property of the defendants that has been used in or facilitated their unlawful activities,

(3) to award pre- and post-judgment interest on appropriate items of damages and costs,

(4) to enter appropriate work orders requiring certain individual defendants to engage in lawful employment pursuits to pay off these damages and judgment debts,

(5) to set aside property transfers made by defendants in recent years which were undertaken specifically to avoid responsibility for unlawful conduct such as involved here,

(6) to award reasonable costs, expenses, expert witness fees & expenses, and attorneys' fees and expenses, as well as any other relief that appears to be necessary and appropriate.

RESPECTFULLY SUBMITTED:

*Roy Lucas*

**Roy Lucas**
**DC #153957**
**Trial Counsel**
**c/o PO Box 1433**
**Melbourne, FL 32902**


**TEL: (407) 725-2413**
**FAX: (407) 725-3847**
**E-Mail: OwlLawyer@AOL.com**

**Scott R Rost**
**Wasserman & Walters**
**228 Park Ave North**
**Winter Park, FL 32789**

**TEL: (407) 539-1140**
**FAX: (407) 539-1126**

**RICHARD & RICHARD, P.A.**      **Lance P Richard, Esq.**
**Colorado Office Plaza**         **FL # 0044156**
**725 Colorado Avenue**
**Stuart, FL 34994**            **Rosemarie Richard, Esq.**
**TEL: (561) 223-9600**       **FL # 0050253**
**FAX: (561) 223-0859**


**ATTORNEYS FOR PLAINTIFFS.**



**{ Service to be effectuated by agreement and**

**appropriate personal service of process }**

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

**99-8164**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

MANHATTAN MAGNOLIA CORP et al

## DEFENDANTS

RAYMOND UNTERBURGER et al

**CIV - HURLEY**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **Palm Beach**
(EXCEPT IN U.S. PLAINTIFF CASES)   *FTL*

A-WPB • 99-8164-HURLEY

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE.   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Roy Lucas          Richard & Richard, PA
PO Box 1433        725 Colo Ave
Melb, FL 32902     Stuart, FL 34994
**(b) BASIS OF JURISDICTION** (561) 223-9600

ATTORNEYS (IF KNOWN)

MAGISTRATE JUDGE
LYNCH

Unknown

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

FACE, FDPPA, FED Q, 18 USC 248,

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

d) arose in Palm Beach county

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☑ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Civil action for damages to redress harassment of reproductive health
care facility, under 18 USC §§ 248, 2721, 42 USC §1983-88, RICO, more

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $
$50 million-plus

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☐ YES  ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE **Gonzalez**

DOCKET NUMBER **95-8025-CR-JAG**

DATE

**March 2, 1999**

SIGNATURE OF ATTORNEY OF RECORD

*Roy Lucas*

FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE